# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DUSTIN HARWICK,<br><br>      Plaintiff,<br><br>v.<br><br>JEAN LUTSEY, DILIP TANNAN,<br>STEPHANIE HAKKILA, and SUSAN<br>PETERS,<br><br>      Defendants. | Case No. 20-CV-1273-JPS<br><br>**ORDER** |

    Plaintiff Dustin Harwick ("Plaintiff"), who is currently incarcerated at Kettle Moraine Correctional Institution ("KMCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. On October 13, 2021, the Court screened the complaint and allowed Plaintiff to proceed on an Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendants Jean Lutsey, Dilip Tannan, Stephanie Hakkila,[1] and Susan Peters. ECF No. 5 at 10.

    On June 17, 2022, Defendant APNP Susan Peters ("Peters") filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies against her. ECF No. 29. On July 19, 2022, Plaintiff filed a brief in opposition. ECF No. 32. Peters did not file a reply brief.

    Following Peters's motion for summary judgment, Peters filed a motion for an extension of time to file dispositive motions in light of the pending exhaustion motion. ECF No. 34. On August 31, 2022, the Court

---

[1]Defendant Hakkila was formerly known as Stephanie Wijas. ECF No. 27.

granted Peters's request and provided that it would set a new deadline for dispositive motions as to Defendant Peters, if needed, at the time it addressed the pending exhaustion motion. ECF No. 35. For the reasons explained below, the Court will deny Defendant Peters's motion for summary judgment based on exhaustion, and will accordingly require Peters to submit any dispositive motion on or before **February 10, 2023.**

1.  **STANDARD OF REVIEW**

    1.1  **Summary Judgment**

    Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

    1.2  **Exhaustion of Prisoner Administrative Remedies**

    The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the

PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id.* § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the

rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[2] If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

## 2. RELEVANT FACTS

Defendant Peters's motion for summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies as to her. The Court accordingly finds the following facts relevant to the disposition of the issue at hand.

### 2.1 Plaintiff's Allegations

All of Plaintiff's claims took place while he was incarcerated at Green Bay Correctional Institution ("GBCI"). ECF No. 1. Plaintiff initially named

---

[2]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

as defendants GBCI's Health Service Unit ("HSU") nurses Stephanie Hakkila ("Hakkila"), Cassandra Baires ("Baires"), Ashley Huempfer ("Huempfer"), Mary Alsteen ("Alsteen"), and Peters; GBCI's HSU manager, Jean Lutsey ("Manager Lutsey"); Doctor Dilip Tannan ("Dr. Tannan"); and GBCI Inmate Complaint Examiner ("ICE") Alan DeGroot ("ICE DeGroot"). *Id.*

On September 26, 2015, Plaintiff submitted a health service request ("HSR") to be examined because, when he ate certain foods, he experienced cramps, bloating, gas, heartburn, and constipation. *Id.* at 4. Two days later, on September 28, 2015, Plaintiff was seen by Huempfer. *Id.* Plaintiff explained his symptoms to Huempfer, and Huempfer scheduled Plaintiff to see an advanced care provider ("ACP") within thirty (30) days. *Id.* In October 2015, Plaintiff met with Dr. Mary Sauvey ("Dr. Sauvey"). *Id.* Dr. Sauvey gave Plaintiff a plan of care regarding his symptoms, but the plan of care did not help, and Plaintiff was still experiencing the same symptoms months later. *Id.* On March 4, 2016, Plaintiff saw Dr. Sauvey again, and she diagnosed him with gastroesophageal reflux disease ("GERD"). *Id.* Dr. Sauvey left GBCI sometime in the spring of 2016. *Id.*

On May 1, 2016, Plaintiff submitted an HSR to be evaluated because the plan of care Dr. Sauvey gave him was not working. *Id.* On May 6, 2016, Alsteen examined Plaintiff and scheduled him to see a doctor within 30 days. *Id.* Plaintiff's symptoms continued to worsen, and he began vomiting after some meals. *Id.* After sending numerous HSRs, Baires responded to Plaintiff and informed him that, due to the limited doctor coverage, medical appointments with doctors were behind schedule, but to let them know if Plaintiff wanted to see a nurse in the meantime. *Id.* On June 7, 2016, Plaintiff

wrote Manager Lutsey a letter and provided her with a food journal that detailed the foods that made Plaintiff sick and caused his symptoms. *Id.*

On June 8, 2016, 34 days after his initial request, Plaintiff was seen by Dr. Tannan. *Id.* at 4-5. Dr. Tannan ordered testing to be done and told Plaintiff to report any blood in his stool or other symptoms, but he did not change Plaintiff's plan of care. *Id.* at 5. Plaintiff submitted an inmate complaint to the ICE regarding the lack of change to his plan of care. *Id.* On June 23, 2016, Plaintiff submitted an HSR requesting to be seen by a someone to discuss his ongoing medical issues. *Id.* A few days later, on June 27, 2016, Plaintiff was seen by Hakkila. *Id.* Plaintiff alleges that Hakkila did not properly document his conditions in her nurse encounter report. *Id.* at 6. Specifically, Plaintiff states that Hakkila did not list all of his symptoms, including vomiting, and instead she only listed hemorrhoids in the nurse encounter report. *Id.* Plaintiff claims that Hakkila's actions caused him to be classified as non-urgent and resulted in him having to wait another 44 days to be seen by a doctor. *Id.*

On August 12, 2016, Plaintiff wrote a letter to Manager Lutsey regarding the wait time for seeing a doctor. *Id.* Manager Lutsey responded on August 30, 2016, informing Plaintiff that the doctor schedule was backlogged and had a waitlist, which was why Plaintiff was seen multiple times by nurses as to triage people by priority. *Id.* Plaintiff alleges that he was not triaged appropriately due to Hakkila's actions on June 27, 2016. *Id.*

On September 16, 2016, Plaintiff was seen by Dr. Lisa Allen ("Dr. Allen"). *Id.* at 7. Dr. Allen diagnosed Plaintiff with GERD and irritable bowel syndrome ("IBS"), prescribed him new medications to treat his symptoms, and gave him IBS literature to help educate him on the medical condition. *Id.* Plaintiff saw Dr. Allen again for a follow-up on October 17,

2016. *Id.* Plaintiff gave Dr. Allen four menus that he highlighted with the meals he had self-selected. *Id.* Dr. Allen noted this in her prescriber's order and noted that the menus were forwarded to Manager Lutsey for diet review. *Id.* Dr. Allen gave Plaintiff more information on IBS and how to self-select meals, and she directed Plaintiff to continue self-selecting until a diet request could be discussed with Manager Lutsey. *Id.*

Over the next month, Plaintiff sent many requests and letters to Manager Lutsey regarding a new diet. *Id.* On November 18, 2016, Manager Lutsey responded to Plaintiff's requests and denied his special diet without stating why. *Id.* On April 21, 2017, Plaintiff filed an HSR, informing HSU about his need for a special diet and asking if his highlighted menus (given to Dr. Allen on October 17, 2016) were considered when Manager Lutsey made her initial decision to deny him a special diet. *Id.* at 8. Manger Lutsey responded on April 25, 2017, stating that she considered all information at the time she made the denial but that she would schedule Plaintiff to see an ACP to evaluate his second request. *Id.* Upset that he had not seen an ACP yet, on May 30, 2017, Plaintiff sent an HSR asking to be seen by an ACP and stated that he had been waiting thirty-nine (39) days so far. *Id.* On June 1, 2017, Hakkila responded and told Plaintiff that his appointment was scheduled as non-urgent and would take place on August 25, 2017. *Id.* Plaintiff wrote Manager Lutsey a letter on June 2, 2017, regarding the long wait; she did not respond. *Id.*

On July 10, 2017, Plaintiff had an appointment with Peters. *Id.* at 9. Plaintiff told Peters about his issues and informed her that self-selecting meals was becoming a financial burden. *Id.* Peters informed Plaintiff that she could not help him with this matter and to discuss it with Manager Lutsey. *Id.* Plaintiff alleges that Peters did not take him seriously and that

she refused to take the four menus that he highlighted and felt needed to be in his medical file. *Id.* Plaintiff contacted Manager Lutsey on July 17, 2017 regarding his diet review and asked for an explanation of why his diet requests were still being denied. *Id.* On July 20, 2017, Manager Lutsey responded to Plaintiff, stating that he did not have a medical need for a special diet, noting that there is no special diet menu for IBS, and suggesting that Plaintiff work with HSU to control his symptoms. *Id.*

Plaintiff filed an inmate complaint regarding Manager Lutsey's denial of a special diet. *Id.* ICE DeGroot denied the inmate complaint. *Id.* On August 3, 2017, Plaintiff sent a final letter to Manager Lutsey, asking her for clarification on why he was being denied the special diet. *Id.* Manager Lutsey responded on August 21, 2017, explaining that she consulted with Peters and a special diet was not recommended by Peters and Manager Lutsey. *Id.* Plaintiff filed another inmate complaint regarding the denial of a special diet. *Id.* ICE DeGroot denied the complaint, stating that the issue was previously addressed. *Id.* at 10. Plaintiff claims that this denial was incorrect because the previous inmate complaints did not provide him with any relief. *Id.* Plaintiff alleged that ICE DeGroot did not handle his inmate complaint properly because he relied on Peters and Manager Lutsey's medical decisions, and not the information that Plaintiff provided him. *Id.*

At the screening stage, the Court found that Plaintiff failed to state any claims against DeGroot, Baires, Huempfer, and Alsteen and accordingly dismissed them from the case. ECF No. 5 at 7, 9–10.

### 2.2. Exhaustion Facts

Defendant Peters failed to submit a separate statement of proposed facts along with her motion for summary judgment. This failure violates the the Court's scheduling order, detailing the Court's specific summary

Page 8 of 16
Case 2:20-cv-01273-JPS   Filed 12/27/22   Page 8 of 16   Document 44

judgment requirements. *See* ECF No. 21 at 5. Despite Peters's failure, the facts regarding the exhaustion of administrative remedies are relatively simple; the Court therefore draws the exhaustion facts from the Declaration of Angeline Koch and the accompanying exhibits, ECF No. 31, Plaintiff's declaration, ECF No. 33, and Plaintiff's response to Peters's facts, ECF No. 32 at 1–2. Peters's "facts"' from her brief in support of the motion for summary judgment contain improper argument and will therefore not be considered for the purposes of determining the undisputed facts at hand. *See* ECF No. 30 at 2–3.

Plaintiff's administrative complaint history is extensive; it comprises five (5) pages and contains approximately 125 individual complaints. ECF No. 31-1. Relevant to the issues at hand, Plaintiff filed two complaints: (1) Inmate Complaint GBCI-2017-19815, received by the Institution Complaint Examiner on August 4, 2017; and (2) Inmate Complaint GBCI-2017-23664 received by the Institution Complaint Examiner on September 18, 2017. *See* ECF No. 31-2, 31-3; *see also* ECF No. 32 at 2. Although Peters fails to address this issue, it appears that Plaintiff appealed these two complaints in accordance with DOC requirements. *See* ECF No. 31-2 at 1; ECF No. 31-3 at 1 (noting ICE Rejection, ICE Rejections Appeal Receipt, and RA Rejections Appeal Report).

Plaintiff's Inmate Complaint GBCI-2017-19815 contained the following information. In response to the question regarding who or what was the one issue of the complaint, Plaintiff responded, "Failure to provide/approve modified diet for medical reasons pursuant to DAI 500.30.24; violating U.S. const. 8th Amend. Cruel and Unusual Punishment Standard; Wis Const. Art. I § 6, numerous DOC XX and DAI policies/procedures violated amounting to deliberate indifference to an

ongoing serious medical need creating an undue burden for inmate patient." ECF No. 31-2 at 8. In response to the question regarding the details surrounding the complaint, Plaintiff responded:

> Relevant Facts: 1. On 7-21-17 complainant received a DOC-3035 form back (see attach. 4), denying him a modified diet for medical reasons under DAI 500.24's policy. This denial came in the form from registered nurse (RN) and currently GBCI's Health Service Manager Jean Lutsey (HSM).
>
> Argument: On 9-16-16 complainant was diagnosed by Dr. Lisa Allen with Irritable Bowel Syndrome (IBS) (see attach. 13 &14). Dr. Allen also provided information on IBS and how to treat/manage this (see attach. 9, 10, 11, & 12).
>
> Complainant submitted for a modified diet for medical reason but was denied on 11-18-16 by HSM Lutsey and there were four menus submitted by Dr. Allen to her (see prescriber's orders in med. file dated 10-17-16). He was told by HSM to self-select as there is no justification for a special diet at that time.
>
> Complainant challenged HSM Lutsey's continuous denial and forcing him to self-select half the GBCI regular menu. The only way he has been able to keep any weight on him is by buying pre-packaged food items from canteen that is not a healthy alternative to the GBCI regular menu. Over $225.00 has now been spent by complainant within 8 months from 11-16-16 to 7-24-17. This is still ongoing.
>
> A modified diet for medical reasons is necessary to improve his quality of life, and [] also meets requirements under clinical conditions. To be forced to self-select half the menu (see attach. 5, 6, 7, 8), is an undue burden that has now cost complainant over $225.00 when he makes less than $30.00 a month for his job assignment at GBCI. Without the help of loved ones, he would be forced to starve, or be subject to symptoms experienced in a 5 week food journal thoroughly documented in medical file, as well as symptoms outlined in Dr. Allen's IBS information (see attach. 9, 10, 11, & 12). Complainant also attempted to obtain recipes for meals but

> HSM Lutsey [], FSA Darryl Martin, and Management Services Dir. Amy Basten refused to work with each other to find relief so complainant could obtain the proper information to provide a medical diet under DOC Admin. Code 309.23(4) and under DAI 500.30.24. Denial of this is a violation of DOC Admin Code 315.03 and DAI 50.10.08.
>
> Therefore, 'prison official must provide special diets that are medically necessary. [citation]. Also HSM Lutsey's decision to again deny a modified diet for medical reasons goes against the wellbeing of the inmate patient under her care. The fact that she has been involved in his care early on in this long process speaks volumes to her ongoing blatant deliberate indifference to his serious medical condition mandating treatment. [citation].

*Id.* at 8-9.[3]

Plaintiff submitted fourteen (14) attachments along with his Inmate Complaint GBCI-2017-19815. Relevant here is Plaintiff's Attachment Three (3), which is a letter to HSM Manager Lutsey dated July 17, 2017. *See* ECF No. 31-2 at 10, 13. Plaintiff refers to his recent visit with the Nurse Practitioner ("N.P.") regarding his need for a special medical diet. *Id.* Plaintiff complains to Lutsey that the N.P. told him she could not help him with his medical diet or accept his menus; the N.P. said that only Lutsey could review his medical diet issue. *Id.* Plaintiff expressed frustration as to why Lutsey, in April, made him go see the N.P. in July if Lutsey was the only person who could approve his medical diet. *Id.*

---

[3] The Court notes that this document is at times difficult to read, and the Court has used its best effort to replicate Plaintiff's statement; minor typographical errors and formatting adjustments have been made for ease of reading this lengthy statement.

Page 11 of 16
Case 2:20-cv-01273-JPS    Filed 12/27/22    Page 11 of 16    Document 44

### 3. ANALYSIS

Defendant Peters requests summary judgment on a single ground: that Plaintiff failed to exhaust his administrative remedies before filing the instant lawsuit. The parties agree that Plaintiff filed an inmate complaint, Inmate Complaint GBCI-2017-19815, in relation to his need for a special diet. The parties further appear to agree that Plaintiff properly exhausted that inmate complaint. Defendant Peters argues, however, that the issues raised in Plaintiff's inmate complaint did not satisfy the exhaustion requirement specifically as to her. Peters argues two reasons that Plaintiff failed to exhaust administrative remedies as to her: (1) Plaintiff "failed to file an Inmate Complaint within the fourteen (14) day requirement"; and (2) Plaintiff "failed to name or identify Nurse Peters in his August 4, 2017 Inmate Complaint (that was also filed outside the fourteen (14) day requirement)." ECF No. 30 at 6. As such, Peters argues that the claim against her must be dismissed for Plaintiff's failure to exhaust administrative remedies. Plaintiff disputes this argument and instead argues that Inmate Complaint GBCI-2017-19815 exhausted his claim against Peters. ECF No. 32 at 2. Plaintiff argues that Peters was not specifically named in Inmate Complaint GBCI-2017-19815 because he attempted to follow GBCI's problem solving guide regarding informal and formal exhaustion. *Id.* Because Defendant Peters told him that only Lutsey could change his diet, he followed up with Lutsey again following his July 10, 2017 appointment and prior to filing his inmate complaint. *See id.*

One purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation. *Woodford v. Ngo,* 548 U.S. 81, 89 (2006); *Schillinger v. Kiley,* 954 F.3d 990, 995 (7th Cir. 2020). Exhaustion "promotes efficiency

Page 12 of 16
Case 2:20-cv-01273-JPS    Filed 12/27/22    Page 12 of 16    Document 44

because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court." *Schillinger*, 954 F.3d at 995.

To provide notice of the conduct complained of, an inmate's complaint must contain the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Where those rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). An inmate need not state "facts, articulate legal theories, or demand particular relief," nor must he name each potential defendant, so long as the grievance "object[s] intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650; *Riccardo*, 375 F.3d at 524. In this way, the approach to interpreting inmate complaints is akin to the federal notice pleading system. *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005). Wisconsin's administrative rules provide little guidance as to the required contents of an inmate complaint; however, those rules do require that offender complaints "[c]ontain only one issue per complaint, and [] clearly identify the issue." Wis. Admin. Code DOC § 310.09(1)(e).

As to Defendant Peters's first argument regarding Plaintiff's failure to specifically name Peters in his inmate complaint, the Court is not persuaded with this line of argument. Plaintiff's grievance need not have specifically named and identified every potential defendant in an eventual lawsuit, nor set forth each and every theory of potential liability relating to Plaintiff's medical care. *See Glick v. Walker*, 385 Fed. Appx. 579, 582 (7th Cir. 2010). Plaintiff submitted Inmate Complaint GBCI-2017-19815 detailing his complaints relating to his medical care for his alleged need for a special medical diet. Although the grievance does not specifically name Peters,

reading the text and attachments together, it is clear that Plaintiff was complaining of an ongoing medical issue with more than just Lutsey involved. As mentioned above, Attachment Three (3) included information about his recent visit with the NP (based on the timeline, presumably Peters) regarding his medical diet. *See* ECF No. 31-2 at 10, 13. Plaintiff complained that the N.P. told him she could not help him with his medical diet or accept his menus; the N.P. said that only Lutsey could review his medical diet issue. *Id.* Read as a whole, this grievance properly put GBCI on notice of Plaintiff's complaints, and made it possible to discern the individuals who had a hand in the medical decisions that were part of the care at issue–a group that included Defendant Peters.

Similarly, the Court is not persuaded by Defendant Peters's line of argument regarding the inmate complaint being filed more than fourteen (14) days after his interaction with Peters. The text of the grievance identifies that his requests for a special medical diet began in November 2016. ECF No. 31-2 at 8. He then lists the more recent denial of a special medical diet on July 21, 2017. *Id.* Based on these and other statements in the grievance and accompanying exhibits, Plaintiff was plainly *not* just challenging the most recent denial of a special medical diet, but rather the ongoing *pattern* of delay on the part of the HSU. Under these circumstances, the Court is satisfied that Plaintiff has met the exhaustion requirement with respect to his claim that his special medical diet was delayed and ultimately denied, even though some of those dates fall more than 14 days before he ultimately felt compelled to file his grievance. *See Turley*, 729 F.3d at 650 (finding exhaustion requirement met where it was clear from grievance that plaintiff "was challenging not just specific incidents of lockdown, but the institution's lockdown policies in general."); *Nieto v. Dittman*, No. 16-CV-

Page 14 of 16
Case 2:20-cv-01273-JPS    Filed 12/27/22    Page 14 of 16    Document 44

163-JDP, 2017 WL 3610571, at *2 (W.D. Wis. Aug. 22, 2017) (exhaustion satisfied because prisoner was complaining about an ongoing lack of care from prison officials and filed grievance "once he ... realized that he would not be able to resolve his grievance with the medical staff informally," even though it was more than 14 days after the earliest instance of the denial of medical treatment); *Edwards v. Schrubbe*, 807 F. Supp. 2d 809, 812 (E.D. Wis. 2011) (same); *but see Compton v. Cox,* 12-cv-837-jdp, 2017 WL 933152, at *3 (W.D. Wis. Mar. 8, 2017)(finding the plaintiff failed to properly exhaust where his grievance mentioned discrete events occurring four years earlier but did not suggest that he was complaining about an ongoing lack of care from prison officials).

Proper exhaustion occurs when a plaintiff files an "appropriate grievance through the proper channels once he has realized that he would not be able to resolve his grievance with the medical staff informally," even if it is more than 14 days after the earliest instance of the denial of medical treatment. *See Edwards*, 807 F. Supp. 2d at 812. That is what Plaintiff did here. As such, the Court finds that Plaintiff's inmate complaint provided sufficient notice to permit prison officials the opportunity to address his concerns with his lack of medical treatment, including Peters's actions, internally before litigation in regard to the Eighth Amendment deliberate indifference to Plaintiff's serious medical need claim brought against Defendant Peters. Plaintiff's Inmate Complaint GBCI-2017-19815 dealt with the ongoing lack of action in regard to his alleged need for a special medical diet; Defendant Peters was allegedly part of this ongoing denial. As such, the Court finds that Plaintiff exhausted his administrative remedies as to Defendant Peters, and will accordingly deny her motion for summary judgment based on exhaustion.

Page 15 of 16
Case 2:20-cv-01273-JPS   Filed 12/27/22   Page 15 of 16   Document 44

### 4. CONCLUSION

For the reasons explained above, the Court will deny Defendant Peters's motion for summary judgment on exhaustion grounds, ECF No. 29. In accordance with the Court's previous order allowing an extension to file dispositive motions, ECF No. 35, Defendant Peters must therefore submit any dispositive motion on or before **February 10, 2023.**

Accordingly,

**IT IS ORDERED** that Defendant Susan Peters's motion for summary judgment based on the exhaustion of administrative remedies, ECF No. 29, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Susan Peters must file any dispositive motion on or before **February 10, 2023**.

Dated at Milwaukee, Wisconsin, this 27th day of December, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge