# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DUSTIN HARWICK,

                    Plaintiff,

v.                                                    Case No. 20-CV-1273-JPS

JEAN LUTSEY, DILIP TANNAN,
STEPHANIE HAKKILA, and SUSAN             **ORDER**
PETERS,

                    Defendants.

## 1.    INTRODUCTION

Plaintiff Dustin Harwick ("Plaintiff"), who is currently incarcerated at Kettle Moraine Correctional Institution ("KMCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. On October 13, 2021, the Court screened the complaint and allowed Plaintiff to proceed on an Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendants Jean Lutsey ("Lutsey"), Dilip Tannan ("Dr. Tannan"), Stephanie Hakkila ("Hakkila"),[1] and Susan Peters ("Peters"). ECF No. 5 at 10.

The issue at hand is the parties' pending motions for summary judgment. However, the Court must first address the preliminary matter of Defendant Lutsey. On November 22, 2021, counsel for Defendants Dr. Tannan and Hakkila filed a notice of appearance. ECF No. 8. On December 10, 2021, counsel filed a notice noting the death of Defendant Lutsey. ECF

---

[1]Defendant Hakkila was formerly known as Stephanie Wijas. ECF No. 27.

No. 10. On December 7, 2021, Plaintiff filed a motion to substitute Defendant Lutsey based on the notice of death. ECF No. 13. On April 26, 2022, the Court denied Plaintiff's motion to substitute, without prejudice, and allowed Plaintiff leave to file a renewed motion seeking to add Lutsey's estate as the defendant. ECF No. 21. Plaintiff did not file a renewed motion seeking to substitute Lutsey. As such, the Court will dismiss Defendant Lutsey from the case. *See* Fed. R. Civ. P. 25(a) ("[I]f the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed").

On August 31, 2022, the Court granted Defendant Peters's motion for an extension of time and allowed her leave to file dispositive motions after the Court's decision on the pending exhaustion of administrative remedies issue. ECF No. 35. On September 1, 2022, Defendant Dr. Tannan and Hakkila (the "State Defendants") filed a motion for summary judgment. ECF No. 36. Plaintiff did not file any opposition. The State Defendants filed a reply on October 25, 2022. ECF No. 42. To date, Plaintiff has filed no opposition to this motion for summary judgment, despite more than six months passing since its initial filing. As such, that motion is now fully briefed and ready for disposition.

On December 27, 2022, the Court denied Defendant Peters's motion for summary judgment based on exhaustion and ordered her to file any dispositive motions on or before February 10, 2023. ECF No. 44. On February 10, 2023, Defendant Peters filed a motion for summary judgment. ECF No. 45. On February 13, 2023, Plaintiff filed a motion for summary judgment. ECF No. 49. On March 3, 2023, the Court denied Defendant Peters's motion to strike Plaintiff's untimely filing and ordered Defendant Peters to respond to Plaintiff's motion for summary judgment. ECF No. 57.

On March 15, 2023, Defendant Peters filed a reply to her motion for summary judgment. ECF No. 58. Plaintiff filed a response to this reply on March 16, 2023, ECF No. 61, along with a response to Defendant Peter's proposed findings of fact and his own declaration, ECF Nos. 62, 63. On March 16, 2023, Defendant Peters filed a motion to strike Plaintiff's untimely response to Peters's motion for summary judgment. ECF No. 64. On March 17, 2023, Defendant Peters filed a response to Plaintiff's motion for summary judgment and proposed findings of fact. ECF Nos. 65, 66. On March 23, 2023, Plaintiff file a response to Defendant Peters's motion to strike along with a declaration. ECF Nos. 67, 68. On March 24, 2023, Plaintiff field a letter regarding issues receiving documents. ECF No. 69. On April 7, 2023, Defendant Peters filed an amended reply in support of her motion for summary judgment along with a reply to her proposed findings of fact. ECF Nos. 70, 71.

Following this marathon of summary judgment filings, the three pending motions for summary judgment are fully briefed and ready for disposition. For the reasons explained below, the Court will grant the State Defendants' motion for summary judgment. The Court will, however, deny without prejudice Defendant Peters's motion for summary judgment and Plaintiff's motion for summary judgment based on their failure to comply with the Court's summary judgment protocols.

## 2.    SUMMARY JUDGMENT PROTOCOLS

On April 26, 2022, the Court entered a scheduling order with specific instructions regarding the Court's summary judgment procedures. ECF No. 21. The scheduling order required that for summary judgment motions, the parties must meet and confer at least 30 days prior to filing the motion and create a single, agreed-upon statement of facts. *Id*. at 5. In line with this

District's Local Rules, the scheduling order permitted the parties to submit a separate set of itemized, disputed facts with pinpoint citations to the record in addition to their statement of stipulated facts. *Id.*; *see also* Civ. L.R. 56(b)(1)(C). Also in line with the Local Rules, the Court's scheduling order informed the parties that, "[i]f a party disagrees whether a statement is material or disputed, it must take care to explain to the Court why its position is correct." ECF No. 21 at 5; *see also* Civ. L.R. 56(c)(2)(B). The Court further explained that "[i]f the parties cannot agree upon a set of facts, or if any of the disputed facts are material, then summary judgment is not appropriate." ECF No. 21 at 5 (citing Fed. R. Civ. P. 56(a)).

### 2.1    State Defendants' Compliance

The Court first addresses the State Defendants' compliance with these protocols. It appears that the State Defendants attempted to comply with the Court's protocols but were unable to do so due to Plaintiff's failure to cooperate. *See* ECF No. 41. Counsel for the State Defendants sent Plaintiff a copy of their proposed findings of fact on August 5, 2022. *Id.* at 1. Plaintiff never responded to these facts and counsel for the State Defendants therefore scheduled a telephone conference on August 29, 2022. *Id.* at 2. During that conference, the parties "conferred briefly and generally regarding Plaintiff's objections to Defendants' proposed findings of fact. *Id.* Nothing in the record indicates what, if any, changes the State Defendants made to their proposed findings of fact as a result of this meeting; the State Defendants filed their proposed findings of fact on September 1, 2022, along with their motion for summary judgment ECF No. 38.[2] Plaintiff has

---

[2]The State Defendants identify in their brief in support of summary judgment that Plaintiff "purportedly disputes nearly all the State Defendants' proposed findings of fact, however, none of his objections will raise any genuine

provided no explanation as to his initial failure to respond to the State Defendants' proposed findings of fact in order to comply with the Court's summary judgment protocols. The Court will not punish the State Defendants for Plaintiff's non-compliance with the summary judgment protocols. Plaintiff also failed to file any opposition to the State Defendants' motion for summary judgment and has also failed to address their proposed findings of fact. As such, the Court will consider the State Defendants' proposed findings of fact ("SDPFF") as undisputed. *See* Fed. R. Civ. P. 56(e)(2). Given these undisputed facts, the Court will address the merits of the State Defendants' motion for summary judgment below.

### 2.2 Defendant Peters's and Plaintiff's Non-Compliance

Unlike the State Defendants, there is no indication that either Defendant Peters or Plaintiff even attempted to comply with the Court's summary judgment protocols when submitting their motions and proposed findings of fact. Defendant Peters submitted her motion for summary judgment on February 10, 2023. ECF No. 45. Nothing in Defendant Peters's motion or accompanying documents indicates whether the parties ever met and conferred as required. *See* ECF Nos. 45–48. Defendant Peters submitted proposed findings of fact with no indication as

---

dispute because his objections generally lack foundation, are unsupported by admissible evidence, or are immaterial." ECF No. 37 at 14. It is entirely unclear why the State Defendants did not address these disputes in their own proposed findings of fact or more clearly explain what these disputes were. But for Plaintiff's utter failure to respond to the State Defendants' motion for summary judgment and proposed findings of fact, the Court would likely have denied the State Defendants' motion for summary judgment for their failure to follow the Court's summary judgment protocols. However, Plaintiff had every opportunity to tell his side of the story regarding the State Defendants and failed to do so at every turn. Plaintiff's failure to prosecute his case against the State Defendants will not result in a windfall for him.

to whether they are disputed or not. *See* ECF No. 47. Plaintiff's motion for summary judgment and accompanying documents are likewise inadequate. *See* ECF Nos. 49–56. Plaintiff submits multiple documents titled proposed findings of fact, ECF Nos. 50, 51, 56, and the parties each respond to the proposed findings of fact, ECF Nos. 62, 66. Neither party discusses any attempt to comply with the Court's protocols or explain their failure to file a joint statement of undisputed facts.

The Court took great care when creating its summary judgment procedures in order to ensure that precious judicial resources are preserved. Every litigant is certainly entitled to his or her day in court; they are not entitled, however, to completely disregard Court orders and to take an unfair share of judicial resources. In this instance, Defendant Peters and Plaintiff have failed to comply with—or at the bare minimum to even acknowledge—the Court's summary judgment requirements regarding factual submissions, and instead seek the Court to do the work for them. The Court declines to do so; summary judgment will therefore be denied without prejudice for both parties' failure to comply with the Court's summary judgment protocols. Given these denials, the Court will also accordingly deny Defendant Peter's motion to strike Plaintiff's untimely response, ECF No. 64, as moot. Should either party wish to file a renewed motion for summary judgment, they must move for leave to do so, attaching thereto a proposed motion for and accompanying documents. The parties remain obligated to comply with the Court's summary judgment protocols, including the meet-and-confer requirement, as set forth in its scheduling order, ECF No. 21. If no dispositive motions are filed on or before **June 30, 2023**, the Court will enter a trial scheduling order.

The Court reiterates that if the parties cannot agree upon a set of facts, or if any of the disputed facts are material, then summary judgment is not appropriate. *See* ECF No. 21 (citing Fed. R. Civ. P. 56(a)). Similarly, if disputed facts are not material to a finding of summary judgment, any motion seeking summary judgment must clearly explain why summary judgment is appropriate despite the acknowledged disputed facts. If Defendant Peters re-files a motion for summary judgment and Plaintiff believes that material issues of fact exist to preclude summary judgment, then Plaintiff should oppose Defendant Peters's motion and explain why disputed issues of fact exist rather than file his own motion for summary judgment.

**3.    LEGAL STANDARD – SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

4.     **FACTUAL BACKGROUND**

Plaintiff is an inmate in the custody of the Wisconsin Department of Corrections ("DOC") and was housed at Green Bay Correctional Institution ("GBCI") at all times relevant to this lawsuit. Plaintiff is currently housed at Kettle Moraine Correctional Institution. SDPFF 1. Dr. Tannan is currently employed by Corrections' Bureau of Health Services as a physician at Oshkosh Correctional Institution. He has held this position since November 2015 and has been continuously licensed to practice medicine in the State of Wisconsin since 1984. Dr. Tannan travelled to GBCI from June to approximately August 2016 to fill in as the physician during a vacancy. On August 1, 2016, a part-time provider started at Green Bay and on September 1, 2016, a full-time provider started. SDPFF 2. Hakkila was previously employed by Corrections as a Nurse Clinician II in the Health Services Unit ("HSU") at GBCI from June 28, 2015 to May 17, 2021. She has been continuously licensed as a registered nurse in the State of Wisconsin since June 16, 2015. She has also been licensed as an Advanced Practice Nurse Practitioner since July 30, 2021. SDPFF 3. Plaintiff has been allowed to proceed on an Eighth Amendment deliberate indifference claim against Hakkila for allegedly not listing all of Mr. Plaintiff's symptoms in his medical records causing him to be classified as non-urgent and against Dr. Tannan for allegedly rejecting Plaintiff's request for a special diet for his gastroesophageal reflux disease ("GERD") and irritable bowel syndrome ("IBS"). SDPFF 4.

On June 8, 2016, Dr. Tannan saw Plaintiff for the first time for ongoing gastrointestinal problems, including cramps, constipation, and nausea. A celiac panel performed in 2015 was negative. An ultrasound for gallstones was negative. Plaintiff stated he tried MiraLAX but it did not

help. Dr. Tannan assessed him as having constipation and abdominal pain. Also, at Plaintiff's request, Dr. Tannan ordered him a gluten free diet for three months as a trial to see if it would help. SDPFF 5. On June 9, 2016, Dr. Tannan was contacted by a nurse at HSU who explained to him that Plaintiff could only be put on a gluten free diet if he had a celiac panel performed and it came back as positive. Therefore, the special diet was denied at that time, and Dr. Tannan ordered a celiac panel to be performed. SDPFF 6. A celiac panel was performed on June 22, 2016. The panel came back negative, so it was not medically necessary for Plaintiff to have a gluten free diet. SDPFF 7.

On June 23, 2016, Plaintiff submitted a Health Service Request ("HSR") complaining that he was experiencing fatigue, saw blood in his stool, and thought he may have the beginning of hemorrhoids. He also stated that his latest stomach pain issue was from June 17, 2016 to June 22, 2016 with symptoms including constipation, cramps, heartburn, vomiting, and chronic stomach pain. This HSR was received by HSU on June 25, 2016 and Plaintiff was scheduled to be seen in HSU by a registered nurse. SDPFF 8.

Hakkila saw Plaintiff in HSU on June 27, 2016. Plaintiff ambulated to HSU in no acute distress. He reported that he had been self-selecting gluten free items from canteen and was eating only a "little bit" of the served food. He said he felt less nausea, vomiting, and diarrhea since he switched to mostly canteen food, but now felt constipated. His last bowel movement was on June 24. He also reported some blood on the toilet paper, so he felt he might be developing a hemorrhoid. Hakkila examined Plaintiff and found no external hemorrhoids or fissures and no blood. SDPFF 9. Nurse Hakkila's treatment notes are her contemporaneous notes. She documents

what is reported to her, what she observes, what her assessment is, and what her plan for the patient is. SDPFF 10. When a patient has multiple medical complaints, the chief complaint is listed as the primary complaint on the Nursing Encounter Protocol exam form at time of appointment so therefore hemorrhoids were listed. SDPFF 11.

During her physical examination of Plaintiff, Hakkila found that his abdomen was flat and non-tender and he was having normal bowel sounds. She asked him if he was experiencing any diarrhea, nausea, or vomiting in the last 24 hours and he said no. Hakkila would not have marked off these symptoms in the Gastrointestinal portion of the Nursing Encounter Protocol form if she had not asked Plaintiff about them. SDPFF 12. Plaintiff was already taking docusate twice daily, which is a stool softener, so Hakkila added 5 Reguloid to his daily medications along with the docusate. Reguloid is a bulk-forming laxative that increases the bulk and water content of the stool to help cause movement in the intestines and encourage bowel movement. Hakkila also recommended he use milk of magnesia ("MOM"), another laxative that works by drawing water into the intestines, as needed to help him pass a bowel movement. MOM is also used to treat upset stomach, heartburn, and indigestion. SDPFF 13.

Plaintiff also requested that Hakkila place him on the list to see the doctor, so she placed him on the non-urgent list at his request. Based on her examination and professional judgment, Hakkila believed it was appropriate for him to be seen on a non-urgent basis. There were no findings in his exam that indicated he needed a more urgent referral. SDPFF 14. Hakkila also advised him to submit an HSR if he saw no improvement, which would have gotten him at least a visit with a nurse, who could have increased the urgency of his appointment with an advanced care provider

("ACP"). SDPFF 15. Even if Plaintiff had complained that he was vomiting at the time of his visit, it would not likely have changed Hakkila's referral to an ACP. Hakkila had previously seen Plaintiff for a nursing visit in November 2015 for ongoing complaints of chronic constipation. And as stated above, she did not find anything in his examination that indicated he needed to be seen urgently by an ACP. SDPFF 16. At all times Hakkila used her professional medical judgment when treating Plaintiff. She addressed his complaints with proper medical care within the scope of her position as a registered nurse based on the symptoms he reported and what she observed during her examination. SDPFF 17.

Hakkila can refer patients for appointments, but she had no control over the actual scheduling of those appointments. SDPFF 18. As a physician, Dr. Tannan has no control over the scheduling of any appointments. That is the responsibility of the HSU. SDPFF 19. Plaintiff submitted an HSR on July 18 and July 25, 2016 in which he complained about symptoms of cramps, constipation, gas, and stomach pain. He was brought to HSU to be seen by Nurse Huempfer on July 28, 2016 but refused to be seen by nursing because he wanted to be seen by a doctor. He was advised he was scheduled to be seen by a doctor and stated he would wait to discuss his symptoms at that time. SDPFF 20. Plaintiff submitted two additional HSRs on July 29 and 30, 2016 regarding these same symptoms. This HSR was responded to by informing Plaintiff that he was scheduled to be seen by the doctor on August 10. SDPFF 21.

Dr. Tannan next saw Plaintiff on August 10, 2016, for follow up regarding his abdominal pain and constipation. Plaintiff stated his last bowel movement was four days ago. His abdomen was nondistended and had no obvious hernias. During a rectal examination, Dr. Tannan found

Plaintiff had no external hemorrhoids and there was no evidence of any blood or fecal impaction. Also, his prostate was not enlarged or tender to the touch. Plaintiff's recent celiac panel was negative. Dr. Tannan also noted an ultrasound done in 2015 was negative for gallstones. Plaintiff's vital signs were normal. Dr. Tannan assessed Plaintiff as having chronic constipation and prescribed him one bottle of magnesium citrate, started him on MiraLAX, ordered lab work, and ordered a follow-up exam in one week. SDPFF 22.

Dr. Tannan saw Plaintiff on August 17, 2016, for a second follow up regarding his abdominal symptoms of constipation. Plaintiff stated he had a very good response to the magnesium citrate and had been taking the MiraLAX. He also stated his cramps were much improved. Dr. Tannan assessed Plaintiff with chronic constipation and told him to continue with MiraLAX. However, Dr. Tannan switched the magnesium citrate (a stronger laxative) to docusate sodium (a gentler stool softener) because the stool softener is safer for long term treatment. He also told Plaintiff to follow up as needed. SDPFF 23. Dr. Tannan did not see or treat Plaintiff after August 17, 2016 at GBCI because he stopped filling in as a physician at GBCI in approximately September 2016. SDPFF 24.

On August 30, 2016, Plaintiff was seen by nursing staff for ongoing abdominal issues, at which time he was informed he would be scheduled for an appointment with a provider after his lab results came in. SDPFF 25. On September 10, 2016, Plaintiff submitted an HSR asking for Dr. Tannan to issue a modified diet due to his stomach issues. This HSR was triaged and responded to by Nurse Bost, who informed Plaintiff he had an appointment with a provider within 1-2 weeks. SDPFF 26. When an inmate has a medical concern, wishes to communicate with medical staff,

and/or requests to be seen by HSU staff, he fills out a HSR form and submits it to the HSU. The HSRs are triaged by nursing staff. Nursing staff uses their training and judgment when triaging the HSRs and prioritizing appointments and inmate needs. SDPFF 27. Sometimes, inmates will use interview/information request forms instead of HSR forms. In these cases, HSU processes interview/information requests in the same way they process HSRs. SDPFF 28. Once nursing staff has triaged and responded to an HSR, it is placed in the inmate's personal request folder portion of the medical record. A response will indicate whether the inmate is scheduled to be seen by HSU staff or an ACP, whether the HSR is referred to another staff member, or referred for copies or a record review, or whether education materials are attached. The responder may also provide written comments. SDPFF 29. Any HSRs or requests Plaintiff directed to Dr. Tannan would have been first reviewed by nursing staff. Plaintiff may have requested a special diet in an HSR but, because of the procedure for triaging HSRs, Dr. Tannan never saw that request. SDPFF 30. Dr. Tannan was never aware Plaintiff was requesting a specialized diet for IBS or GERD because Plaintiff never requested a special diet for those conditions from Dr. Tannan directly. SDPFF 31.

The Canteen is a place where inmates can purchase approved goods and over the counter medications for their individual use and consumption. SDPFF 32. Plaintiff's canteen purchases from November 7, 2016 to July 31, 2017 included many non-gluten free food items, as well as many poor-quality junk food items that would exacerbate a number of his gastrointestinal complaints including IBS and GERD. For example, the many spicy junk food items could worsen GERD symptoms. As another example, Plaintiff regularly purchased ramen noodles which likely

contained monosodium glutamate ("MSG"), which is known to cause gastrointestinal distress. SDPFF 33. At the time Dr. Tannan treated Plaintiff in the summer of 2016, it was not his practice to review Canteen purchases, and did not review Plaintiff's Canteen purchases. Dr. Tannan relied on Plaintiff's reported symptoms and history. SDPFF 34.

5. **ANALYSIS**

The State Defendants' motion for summary judgment seeks dismissal of the Eighth Amendment deliberate inference to a serious medical need claim because the record is devoid of evidence to support a deliberate indifference claim as to Dr. Tannan and Hakkila. ECF No. 37 at 2. Despite Plaintiff's failure to oppose summary judgment and the State Defendants' proposed findings of fact, the Court has independently reviewed the motion to determine whether it states adequate grounds for the relief requested. *See Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996) ("[T]he Seventh Circuit . . . requires that before granting a dispositive motion as unopposed, the trial judge must look at the motion to determine whether it states adequate grounds for the relief requested.")). Based on the Court's review of the State Defendants' submissions, and for the reasons explained below, the Court will grant the State Defendants' motion for summary judgment.

5.1 **Eighth Amendment Standard**

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. To prove that the State Defendants violated his rights under the Eighth Amendment, Plaintiff must present evidence establishing that he suffered from "'an objectively serious medical condition'" and that the State Defendants were "'deliberately, that is subjectively, indifferent'" to that

condition. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"'A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir. 1996)).

Under the Eighth Amendment, an incarcerated person does not have the right to direct his own course of treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Likewise, an incarcerated person's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Johnson v. Doughty*, 433 F.3d

1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[ ] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). To defeat Defendant's motion for summary judgment, Plaintiff must present evidence showing the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Id.* at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Finally, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). To prevail on an Eighth Amendment claim alleging a delay in providing treatment, the plaintiff "must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016). Such evidence may include a showing in the plaintiff's medical records that "the patient repeatedly complained of enduring pain with no modifications in care." *Id.* at 731; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

### 5.2    Eight Amendment – Analysis

First, the State Defendants do not argue that Plaintiff did not have an objectively serious medical need. As such, for the purposes of this Order the Court will assume, without definitively ruling, that Plaintiff suffered from an objectively serious medical condition and satisfies the first prong of the deliberate indifference standard.

Second, assuming Plaintiff suffered a serious medical condition, the Court finds that no reasonable juror could find the State Defendants were deliberately indifferent to Plaintiff's need for treatment. This is a classic case of disagreement over medical treatment. Based on the allegations in Plaintiff's complaint, he believes the State Defendants improperly treated him and failed to provide him with a medically necessary special diet. Plaintiff's subjective belief of what was or was not proper medical treatment, however, is insufficient to survive summary judgment. Plaintiff's failure to respond to the State Defendants' motion for summary judgment is detrimental to opposing summary judgment. However, even assuming Plaintiff had responded and disputed many of the State Defendants' proposed findings of facts, the undisputed medical records in this case would almost certainly have won the day regardless. "A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998)). Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). Federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011); *Sain,* 512 F.3d at 895.

As to Dr. Tanner, the undisputed facts show that he saw Plaintiff only three times during the summer of 2016 and he attempted to address Plaintiff's medical complaints. At their first visit, after reviewing Plaintiff's prior medical records (which included a negative gallstone test and a negative celiac panel) and taking Plaintiff's history, Dr. Tannan performed an exam and diagnosed him with chronic constipation. SDPFF 5. Dr. Tannan also ordered him another celiac test in an attempt to provide Plaintiff with a gluten-free diet. SDPFF 6. Dr. Tannan again saw Plaintiff again in August 2016, and again diagnosed him with chronic constipation. Dr. Tannan prescribed two laxatives and ordered lab tests for Plaintiff's thyroid to rule out thyroid conditions which may have been impacting the speed at which food moved through his digestive track. Dr. Tannan also scheduled a follow-up visit for Plaintiff one week after this visit. SDPPF 22. At his follow-up visit on August 17, Plaintiff reported much improved symptoms which appeared to confirm Dr. Tannan's diagnosis of chronic constipation. Dr. Tannan accordingly switched Plaintiff to a laxative safer for long-term use. SDPFF 23. Dr. Tannan never treated Plaintiff again after this visit, and nothing indicates that he was ever aware of Plaintiff's later request for a specialized diet. Plaintiff has offered no evidence calling into question Dr. Tannan's exercise of professional judgment in treating Plaintiff. Plaintiff may have disagreed with Dr. Tannan's course of treatment, but Plaintiff's subjective believe is insufficient to prove deliberate indifference. *Johnson,* 433 F.3d at 1013. On this record, the Court finds that no reasonable juror could find that Dr. Tannan was deliberately indifferent to Plaintiff's medical needs.

Similarly, the undisputed facts demonstrate that no reasonable juror could find that Hakkila was deliberately indifferent to Plaintiff's medical

needs. Plaintiff's allegations against Hakkila stem from his visit with her on June 27, 2016, where she allegedly failed to properly document Plaintiff's conditions in her nursing report and therefor improperly caused him to be classified as non-urgent. *See* ECF No. 5 at 4. Specifically, Plaintiff alleged that Hakkila did not list all of his symptoms, including vomiting, and instead she only listed hemorrhoids in the nurse encounter report. *Id.* In response, Hakkila provides undisputed evidence that when a patient has multiple medical complaints, the chief complaint is listed as the primary complaint on the Nursing Encounter Protocol exam form at the time of appointment, and that is the reason that hemorrhoids were listed. SDPFF 11. During her physical examination of Plaintiff, Hakkila found that his abdomen was flat and non-tender and he was having normal bowel sounds. She asked him if he was experiencing any diarrhea, nausea, or vomiting in the last 24 hours and he said no. Hakkila states she would not have marked off these symptoms in the Gastrointestinal portion of the Nursing Encounter Protocol form if she had not asked Plaintiff about them. Hakkila adjusted his already prescribed medication based on her examination, and also recommended he use MOM as needed. SDPFF 13. Hakkila did not find anything in his examination that indicated he needed to be seen urgently by an ACP.

Even assuming, as Plaintiff alleged, that Hakkila improperly documented his symptoms and improperly classified him as non-urgent for follow-up care, the Court would nonetheless find no deliberate indifference on this record alone. Deliberate indifference requires "[s]omething more than negligence or even malpractice." *Pyles*, 771 F.3d at 409. Courts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the

circumstances. *Id.* Plaintiff has provided no evidence that Hakkila's treatment of his condition was even negligent, or much less rose to the level of deliberate indifference. As such, the Court finds that no reasonable juror could find Hakkila acted with deliberate indifference to Plaintiff's medical needs.

Based on the forgoing, the Court finds that no reasonable jury could find that the State Defendants were subjectively deliberately indifferent to Plaintiff's serious medical need. "'[D]eliberate indifference' is a synonym for 'intentional or reckless conduct,' and 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Enge v. Obaisi*, No. 13 C 5154, 2016 WL 1359368, at *2 (N.D. Ill. Apr. 6, 2016) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). The Court cannot draw this inference based on the summary judgment record here. The Court will therefore grant the State Defendants' motion for summary judgment in its entirety and will dismiss Dr. Tannan and Hakkila from this case.

## 6.    CONCLUSION

For the reasons explained above, the Court will dismiss Defendant Lutsey from this action. The Court will grant the State Defendants' motion for summary judgment in full and will accordingly dismiss Defendants Dr. Tannan and Hakkila from this action. The Court will deny without prejudice Defendant Peters's and Plaintiff's motions for summary judgment based on their failure to comply with the Court's summary judgment protocols. If Defendant Peters and Plaintiff do not file renewed motions for summary judgment on or before **June 30, 2023**, the Court will enter a trial scheduling order at that time.

Accordingly,

**IT IS ORDERED** that Defendant Jean Lutsey be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the State Defendants' unopposed motion for summary judgment, ECF No. 36, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Dilip Tannan and Stephanie Hakkila be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Defendant Susan Peters's motion for summary judgment, ECF No. 45, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment, ECF No. 49, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendant Peters's motion to strike Plaintiff's untimely response, ECF No. 64, be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that the Court will enter a trial scheduling order if no party moves for leave to file a dispositive motion on or before **June 30, 2023**.

Dated at Milwaukee, Wisconsin, this 1st day of May, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge